# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| JUANITA TANSIL, as assignee, ) | |
| ) | |
| Plaintiff, ) | Case No. 4:12 CV 26 DDN |
| ) | |
| v. ) | |
| ) | |
| ALLSTATE INDEMNITY COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This action is before the court on motions of defendant Allstate Indemnity Company for summary judgment against plaintiff Juanita Tansil, to strike, and to deem material facts admitted (Docs. 53, 56, 65) and the motion of plaintiff Juanita Tansil to strike defendant's summary judgment reply and response to plaintiff's statement of material facts (Doc. 75). The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 20.) The court heard oral argument on December 10, 2013.

## I. BACKGROUND

On November 15, 2011, plaintiff Juanita Tansil as assignee commenced this action in the Circuit Court of St. Louis County against defendant Allstate Indemnity Company. (Doc. 2.) On January 5, 2012, defendant removed the action to this court under 28 U.S.C. § 1441(b), invoking diversity of citizenship jurisdiction under 28 U.S.C. § 1332. (Doc. 1.) In her complaint, plaintiff alleges breach of insurance contract regarding the failure to pay a claim for stolen goods and vexatious refusal to pay.[1]  (Doc. 2.)  Plaintiff requests actual damages, statutory damages, interest, and attorney fees.  (Id.)

---

[1] The complaint originally contained two other breach of insurance contract claims that alleged that defendant failed to pay insurance claims relating to waterline breaks that occurred on January 16, 2007, and December 31, 2008.  (Doc. 2 at ¶¶ 7-11.)  On December 13, 2012, the court sustained plaintiff's motion to dismiss these claims.  (Doc. 27.)  However, these claims remain relevant for resolution of the pending motions as part of defendant's counterclaim.

On February 6, 2012, defendant filed a counterclaim for declaratory judgment. (Doc. 12.) Defendant alleges that plaintiff or her assignors submitted three claims: (1) water damage as a result of a collapsed cast iron drain in the foundation on January 16, 2007; (2) water damage as a result of rainwater that pooled in the outdoor stairwell and ran through the basement door on December 30, 2008; and (3) theft of personal property on March 3, 2009. (Id.) Defendant seeks a declaratory judgment that it satisfied its contractual obligations on these three claims. (Id.)

## II. MOTION TO STRIKE

On June 28, 2013, plaintiff, acting pro se,[2] filed several documents with the court, including a letter to the court, rules from the Missouri Department of Insurance, four articles regarding unsavory insurance practices, information regarding four of plaintiff's deceased family members, and correspondence between plaintiff and counsel for defendant regarding the settlement of this case. (Docs. 40-51.) Defendant moved to strike these documents because they are not pleadings or memoranda and contain hearsay statements. (Docs. 56, 57.)

Fed. R. Civ. P. 12(f) states that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A court possesses liberal discretion when ruling on motions to strike under Rule 12(f). BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007). Generally, a motion to strike is disfavored because it is considered an "extreme measure" and thus is infrequently granted. Stanbury Law Firm v. IRS, 221 F.3d 1059, 1063 (8th Cir. 2000). Further, "a party must make a showing of prejudice before a court will grant a motion to strike." Factory Mut. Ins. Co. v. Nebraska Beef, Inc., 2009 WL 2886315, *2 (D. Neb. 2009). "The prejudice requirement is satisfied if striking the [matter] would, for example, prevent a party from engaging in burdensome discovery, or otherwise expending time and resources litigating irrelevant issues that will not affect the case's outcome." Fluid Control Products, Inc. v. Aeromotive, Inc., 2010 WL 427765, *2 (E.D. Mo. 2010).

Although the court allowed plaintiff to file these documents with the court, the court does not construe them as pleadings in this case. These documents, although filed, will not result in

---

[2] An attorney represented plaintiff at the commencement of this action, but the court sustained his motion to withdraw on April 2, 2013. (Doc. 33.) On October 15, 2013, another attorney entered on plaintiff's behalf and remains plaintiff's counsel as of the issuance of this opinion. (Doc. 61.)

additional discovery or other litigation efforts.  Additionally, merely by allowing plaintiff to file these documents, the court does not admit them as evidence.  Rather, in the event that they are offered as evidence, the court will determine their admissibility pursuant to the Federal Rules of Evidence.

Accordingly, defendant's motion to strike is denied.

### III. MOTION TO DEEM MATERIAL FACTS ADMITTED

On October 21, 2013, defendant moved to deem material facts admitted under Fed. R. Civ. P. 56(e) and Local Rule 7-4.01(E), arguing that plaintiff failed to controvert defendant's statement of material facts within the time set by the second amended scheduling order.  (Doc. 65.)  Defendant also details the delays in this case caused, in part, by plaintiff's efforts to obtain counsel. (Doc. 66.)

On April 2, 2013, plaintiff failed to appear at the hearing for the motion to withdraw. (Doc. 34.)  However, she appeared before the court at all hearings thereafter.  (Docs. 35, 37.)  On October 15, 2013, plaintiff requested leave to file a response to defendant's motion for summary judgment out of time, acknowledging that her response was due five days earlier but explained that she had only recently retained counsel.  (Doc. 62.)  The court found that plaintiff's circumstances constituted good cause as required under Fed. R. Civ. P. 16(a)(4) and issued a third amended scheduling order, which required plaintiff to file a response by November 14, 2013. (Doc. 63.)  Plaintiff complied with this deadline. (Docs. 67, 68.)

Although the Federal Rules of Civil Procedure apply with equal force to pro se litigants, see Carman v. Treat, 7 F.3d 1379, 1381 (8th Cir. 1993), plaintiff's conduct does not warrant the extreme measure of deeming material facts admitted.  Therefore, the court declines to deem the material facts admitted without consideration of plaintiff's response.  Accordingly, defendant's motion to deem material facts admitted is denied.

### IV.  MOTION FOR SUMMARY JUDGMENT

Defendant moves for summary judgment, arguing that it satisfied its contractual obligations under the insurance policy.  Specifically, regarding the January 16, 2007 insurance claim, defendant argues that it paid the full amount assessed under the appraisal process set forth by the policy.  Regarding the December 30, 2008 insurance claim, defendant argues that the

policy excludes the claim through the flood and drain exclusionary provisions. Regarding the March 3, 2009 insurance claim, defendant argues that plaintiff failed to comply with policy provisions and caused it prejudice, barring plaintiff from recovering under the insurance policy. (Doc. 54.)

Plaintiff responds that defendant improperly filed several exhibits supporting defendant's motion for summary judgment. Plaintiff further responds that defendant was not entitled to deduct previously paid amounts from the appraisal award, that the January 16, 2007 loss caused the December 30, 2008 loss, and that the policy provisions did not exclude the December 30, 2008 loss because rainwater caused it. Additionally, plaintiff responds that she complied with the policy provisions and that defendant showed no prejudice caused by any failure to comply. (Doc. 67.)

Defendant replies that the insureds accepted the appraisal award check in full satisfaction of the January 16, 2007 loss claim and that plaintiff misconstrues the doctrine of setoff under Missouri law. Defendant also replies that, due to the election of the insureds under Mo. Rev. Stat. § 379.150, Missouri's partial loss law, to receive a monetary sum rather than repairs, it had no duty to repair the January 16, 2007 loss and had no liability for the failure to repair.[3] Additionally, regarding the March 2009 loss, defendant argues that it notified plaintiff of the duty to file a police report and that the inability to investigate the claim prejudiced it.[4] (Doc. 73.)

## V. EVIDENTIARY OBJECTIONS

Plaintiff raises several evidentiary objections to the documents submitted in support of defendant's statement of material facts. Plaintiff first argues that the insurance policy document

---

[3] Mo. Rev. Stat. § 379.150 states:

> Whenever there is a partial destruction or damage to property covered by insurance, it shall be the duty of the party writing the policies to pay the assured a sum of money equal to the damage done to the property, or repair the same to the extent of such damage, not exceeding the amount written in the policy, so that said property shall be in as good condition as before the fire, at the option of the insured.

[4] Although the insureds had not assigned plaintiff, their daughter, their insurance claim at the time of the March 2009 loss, the record reflects that plaintiff spoke regarding the loss on the insureds' behalf to defendant. (Doc. 52-15.)

provided by defendant in support of its motion for summary judgment was incomplete and therefore violated Fed. R. Civ. P. 56(c)(1)(A) and the best evidence rule. However, defendant has thereafter filed a complete copy of the insurance policy. (Doc. 73-1.)

Next, plaintiff argues that the electronic claim notes are inadmissible hearsay.[5] (Docs. 52-8, 52-13, 52-15.) Defendant responds that the records fall under the business record hearsay exception. Business records are admissible hearsay if:

>   (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
>   (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
>   (C) making the record was a regular practice of that activity;
>
>   (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
>   (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). The affidavit of Lisa Generally, submitted by defendant to establish the authenticity and circumstances of the records, indicates that the requirements of Rule 806(6) are satisfied. (Doc. 73-2.)

Next, plaintiff objects to defendant's use of plaintiff's deposition testimony that describes the December 30, 2008 loss, arguing that plaintiff is not qualified as an expert to testify about the cause of the loss. Specifically, plaintiff testified that water was "backed up" inside the drain and an Allstate employee testified that plaintiff informed defendant that water from the side of the house pooled near an outside drain on the ground. Fed. R. Evid. 701 allows lay witnesses to testify as to opinions as long the testimony is:

>   (a) rationally based on the witness's perception;

---

[5] Defendant refers to Docs. 52-8, 52-13, and 52-15 as electronic claim diaries and offers them as evidence in support of its motion for summary judgment. Specifically, these are defendant's records which document events related to plaintiff's insurance claims, including conversations with plaintiff or the insureds, investigation progress, and appraisal arrangements. (Docs. 52-8, 52-13, 52-15.)

> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

The court finds that plaintiff did not base her observational statements, regarding the flow of water and an ineffective drain, on specialized knowledge. Further, plaintiff does not argue that that the statements were not based on her perception or that they are not helpful to determining the cause of the loss. They are her eyewitness observations and are not excludable as inadmissible opinions.

Plaintiff objects to defendant's use of defendant's Exhibit R (Doc. 58) in support of statements of fact regarding the amounts paid on the January 2007 claim prior to the appraisal. Plaintiff argues that the exhibit does not support such statements. However, the electronic claim notes set forth the amounts of these payments. (Doc. 52-8 at 1.) Similarly, plaintiff also objects because defendant cites Exhibit "S" in support of statements regarding an offer of judgment. Defendant did not submit a document marked Exhibit S. It submitted the offer of judgment as Exhibit R. Its denomination of the document as Exhibit S was a mere clerical error. (Doc. 58.)

Plaintiff's evidentiary objections are overruled.

## VI. FACTUAL BACKGROUND

The record establishes that the following facts are without genuine dispute. Defendant Allstate is a corporation authorized to conduct insurance business within the state of Missouri. (Doc. 12 at ¶ 1; Doc. 22 at ¶ 1.) Allstate issued a homeowners policy to Robert and Vernetta Hamilton, effective March 26, 2006, for their residence located at 1815 Cambridge, St. Louis, Missouri. (Doc. 73-1.) The policy was continuously renewed through March 26, 2009. (Doc. 52-2.) Plaintiff is the daughter of the insureds. (Doc. 52 at ¶ 2; Doc. 68 at ¶ 2.) Robert Hamilton died on March 4, 2011. (Doc. 52-6 at 2.) On November 5, 2011, Vernetta Hamilton assigned her claims under the insurance policy to plaintiff. (Doc. 52-4.) Vernetta Hamilton died on December 17, 2011. (Doc. 52-6 at 2.)

The insurance policy provided dwelling protection and personal property protection coverage but did not cover such losses if they were caused by:

> 1. Flood, including, but not limited to surface water, waves, tidal water, or overflow of any body of water, or spray from any of these, whether or not driven by wind.
>
> 2. Water or any substance that backs up through sewers or drains.
>
> * * *
>
> 4. Water or any other substance on or below the surface of the ground, regardless of its source.  This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the residence premises.

(Doc. 73-1 at 16, 20-21.)

The insurance policy required the insureds to satisfy conditions following a loss, including protecting the property from further loss and making reasonable repairs as necessary. (Id. at 24.)  The insurance policy also required reporting "any theft to the police as soon as possible" and sending defendant "a detailed list of the damaged, destroyed, or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed." (Id.)

Further, the policy set forth an appraisal process to value claims in the event of disagreement:

> **7. Appraisal**
>
> If you and we fail to agree on the amount of loss, either party may make written demand for an appraisal.  Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received.  The appraisers will select a competent and impartial umpire.  If the appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the resident premises is located to select an umpire.
>
> The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item.  If the appraisers submit a written report of an agreement to you and to us the amount agreed upon shall be the amount of loss.  If they cannot agree, they will submit their differences to the umpire.  A written award agreed upon by any two will determine the amount of loss.
>
> Each party will pay the appraiser it chooses, and equally bear expenses for the umpire and all other umpire expenses.

(Id. at 27.)

January 2007 Claim

On May 10, 2007, plaintiff on behalf of the insureds notified defendant of a water loss in the basement of the insureds' residence that began on January 26, 2007. (Doc. 52-8 at 7.) Defendant's investigation revealed that a collapsed drain within the foundation of the home caused the water loss. (Id. at 6.) Defendant did not dispute coverage and paid the insureds $47,862.81 for dwelling damage, $43,575.32 for living expenses, $16,568.26 for personal property, and $5,000.00 for mold. (Id. at 1-2.) However, the insureds disputed the amount of the claim, and on March 10, 2008, the insureds demanded an appraisal under the policy. (Id. at 5.)

In accordance with the appraisal method set forth in the policy, on September 8, 2009, the insureds designated Jerry Kramer as their appraiser, and defendant designated Mike Boland. (Id. at 3.) The appraisers selected Brian Maher as the umpire. (Doc. 52-10 at 1.) On April 5, 2011, Brian Maher and Jerry Kramer agreed that the replacement cost of the dwelling loss was $114,061.86, a sum that covered damage to the porch, and the cost of the living expenses was $16,500.00. (Id.; Doc. 68-3 at 1.) On May 3, 2011, Jerry Kramer sent Mike Boland a list of personal property that "Allstate did not pay for" and appraised the replacement cost at $13,403.60. (Doc. 68-8.) On May 26, 2011, Mike Boland and Jerry Kramer agreed that the replacement cost of the personal property loss was the $13,403.60. (Doc. 52-10 at 2.)

The preface to the appraisal awards is as follows:

> TO THE PARTIES OF INTEREST
>
> We, the undersigned pursuant to our appointment certify that we have truly, conscientiously and impartially performed the duties assigned to us, and have appraised, determined and do hereby agree that the value of the damage for the claim presented by the insured is as follows. As appraisers, we agree that we are only responsible to determine the amount of damages and not the causation or coverage for these damages.
>
> The appraisal award is made without consideration of any of the provisions of the referenced insurance policy which might affect the insurer's liability thereunder and in compliance with the AGREEMENT FOR SUBMISSION TO APPRAISERS AND UMPIRE.

(Doc. 52-10.)

Afterwards, plaintiff and Vernetta Hamilton sent the appraisal awards to defendant in order to settle the claim.  (Doc. 52-11.)  On July 6, 2011, defendant sent a check for $66,199.05 to Vernetta and Robert Hamilton.[6]  (Doc. 52-12.)  The check read, "In payment for Dwelling, For Sewer BackupLoss for Date of Loss 1/16/2007."  (Id.)  The check was endorsed, "Robert Hamilton" and received by plaintiff.  (Id.; Doc. 68-1 at 2.)  On July 19, 2011, Jerry Kramer indicated that defendant improperly deducted the amounts previously paid from the personal property and living expenses appraisal awards.  (Doc. 68-3.)

### December 2008 Claim

On January 27, 2009, Robert Hamilton reported water infiltration in the basement that occurred on December 30, 2008.  (Doc. 52-13 at 3.)  He stated that rain came from the roof of the residence, through the gutters, onto the exterior stairway, and into the basement and that interior pipes did not cause the water infiltration.  (Id.)  On August 17, 2009, plaintiff on behalf of the insureds reported that the water came from the exterior stairway and into the basement due to some incomplete repairs.  (Id. at 2.)  On June 29, 2011, she also reported that a clogged drain outside the basement door caused the water infiltration.  (Id. at 1.)  Further, at an August 28, 2012 deposition, she reported that water came from a drain inside the basement and that it rained on December 30, 2008.  (Doc. 52-6 at 4-6.)  In an affidavit dated November 13, 2013, she also stated that the outside drain was clogged due to the failure to install a backsplash following the repairs for the January 16, 2007 loss.  (Doc. 68-1 at 2.)

### March 2009 Claim

On March 9, 2009, Robert Hamilton reported to defendant that there were broken windows near his back porch and in a bedroom and he requested emergency services to repair his home.  (Doc. 52-15 at 5.)  On March 13, 2009, plaintiff on behalf of the insureds reported to defendant the theft of several items related to the March 9 incident.  (Id. at 4.)  Defendant requested information regarding the stolen items.  (Id.)  On March 16, 2009, plaintiff emailed defendant a list of ten items but without information regarding make, model, or value.  (Doc. 52-16.)

---

[6] This amount of the check ($66,199.05) equals the difference between the amount previously given to the insured for the dwelling loss ($47,862.81) and the amount of the appraisal award for the dwelling loss ($114,061.86).

- 9 -

## VII.  SUMMARY JUDGMENT STANDARD

Courts must grant summary judgment when the pleadings and evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is "material" if it could affect the ultimate disposition of the case, and a factual dispute is "genuine" if there is substantial evidence to support a reasonable jury verdict in favor of the nonmoving party.  Rademacher v. HBE Corp., 645 F.3d 1005, 1010 (8th Cir. 2011).  Stated another way, the party defending the motion must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Catrett, 477 U.S. at 322.  The court must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences.  Scott v. Harris, 550 U.S. 372, 379 (2007).

## VIII. DISCUSSION

Defendant moves for summary judgment on the three claims submitted by the insured and on plaintiff's claim regarding the March 2009 theft.  "The burden of proof in a diversity action is typically a matter of state law."  Am. Eagle Ins. Co. v. Thompson, 85 F.3d 327, 330 (8th Cir. 1996).  An action for declaratory judgment does not typically alter the burden of proof.  Id. at 331-32.  Under Missouri law, "[e]ven though it is an insurer that brings a declaratory judgment action, the insured has the burden of proving that the underlying action is covered by the insurance policy."  Shelter Mut. Ins. Co. v. Ballew, 203 S.W.3d 789, 792 (Mo. Ct. App. 2006).  "The insurer bears the burden of establishing that an exclusion to coverage applies."  Id. "The burden of proof upon the question of compliance with the condition [is] ordinarily imposed upon the insured."  Nw. Mut. Ins. Co. v. Independence Mut. Ins. Co., 319 S.W.2d 898, 903 (Mo. Ct. App. 1959).

### A. January 2007 Claim

Regarding the January 16, 2007 claim, defendant argues that it paid the full amount assessed under the appraisal process set forth by the policy.  Plaintiff responds that defendant was not entitled to deduct the amounts paid on the claim prior to the appraisal awards on April 5

and May 26, 2011.  Defendant replies that the insureds accepted the appraisal award check in full satisfaction of the January 16, 2007 loss claim and that plaintiff misconstrues the doctrine of setoff under Missouri law.

The insurance policy states that the amount determined through the appraisal method is the amount of the loss.  (Doc. 73-1 at 27.)  Because the language of the appraisals refers to the claim rather than merely the unpaid portions of the claim, the appraisals state that the total amount of the dwelling loss was $114,061.86, the total cost of the living expenses was $16,500.00, and the total personal property loss was the $13,403.60.  (Doc. 52-10.)  These amounts total $143,965.46.  For these losses, defendant paid to the insureds the sum of $174,205.44.  (Doc. 52-8 at 1-2.)  Based on these amounts, defendant argues that it paid the insureds more than required by the policy.

With respect to the dwelling loss, the evidence is undisputed that the dwelling loss appraisal accounted for the amount previously paid by defendant to the insureds.  As stated above, the language of the appraisals so indicates.  (Doc. 52-10.)  Further, Jerry Kramer's letter to plaintiff's former counsel indicated that the appraisers accounted for the previous payments. (Doc. 68-3.)  Additionally, he indicated that the amount included the damage to the insureds' porch.  (Id.)

However, with respect to the personal property loss and the living expenses, the evidence is undisputed that Jerry Kramer, the appraiser chosen by the insureds, submitted his appraisal based on the unpaid portions of these losses.  For example, Jerry Kramer sent Mike Boland, the appraiser chosen by defendant, a list of personal property that "Allstate did not pay for" and suggested a replacement cost of $13,403.60, the amount later appraised by Jerry Kramer and Mike Boland as the amount of the personal property loss.  (Doc. 52-10; Doc. 68-8.) Additionally, Jerry Kramer's letter to plaintiff's former counsel indicates that he did not intend for defendant to deduct sums previously paid by defendant for the living expenses and the personal property loss appraisals.  (Doc. 68-3.)

Fraud, misconduct, carelessness or partiality on behalf of one or more of the appraisers constitute grounds to set aside an appraisal award.  See Equity Mut. Ins. Co. v. Campbell, 886 S.W.2d 221, 223 (Mo. Ct. App. 1994) (citing St. Paul Fire & Marine Ins. Co. of St. Paul, Minn. v. Tire Clearing House, 58 F.2d 610, 613 (8th Cir. 1932); Young v. Pennsylvania Fire Ins. Co., 187 S.W. 856, 860 (Mo. 1916)).  The record is insufficient to determine the precise cause, but

the record shows the disconnect between defendant's interpretation and Jerry Kramer's understanding of the appraisal award.

Defendant also argues that the insureds' acceptance of the check constitutes satisfaction of the January 2007 claim. "Accord and satisfaction is a contract which must reflect the essential elements of the meeting of the minds of the parties and the giving and receiving of something of value as consideration therefor, contemplated as something less than the amount claimed by a creditor." Majestic Bldg. Material Corp. v. Gateway Plumbing, Inc., 694 S.W.2d 762, 764 (Mo. Ct. App. 1985). The check read, "In payment for Dwelling, For Sewer BackupLoss for Date of Loss 1/16/2007." (Doc. 52-12.) The terms of the check indicate that defendant offered the check solely to satisfy part of the January 2007 claim – the dwelling loss. The check was endorsed, "Robert Hamilton," and received by plaintiff. (Id.; Doc. 68-1 at 2.)

Therefore, the court cannot find that defendant satisfied its contractual obligations for the personal property loss and living expenses portions of the January 2007 claim. However, the court finds that defendant satisfied its contractual obligations regarding the dwelling loss. Accordingly, with respect to the January 2007 claim, defendant's motion for summary judgment is sustained regarding the dwelling loss portion of the January 2007 claim but is denied in all other respects of that claim.

**B. December 2008 Claim**

Regarding the December 30, 2008 insurance claim, defendant argues that the policy excludes the claim through the flood and drain exclusionary provisions. Plaintiff responds that the January 16, 2007 loss caused the December 30, 2009 loss, and that the policy provisions did not exclude December 30, 2009 loss because rainwater caused it. Defendant replies that, due to the election of the insureds to receive a monetary sum rather than repairs, it had no duty to repair the January 16, 2007 loss and had no liability for the failure to repair.

The insurance policy provided dwelling protection and personal property protection coverage but did not cover such losses if they were caused by:

> 1. Flood, including, but not limited to surface water, waves, tidal water, or overflow of any body of water, or spray from any of these, whether or not driven by wind.
>
> 2. Water or any substance that backs up through sewers or drains.

* * *

>   4. Water or any other substance on or below the surface of the ground, regardless of its source.  This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the residence premises.

(Doc. 73-1 at 16, 20-21.)

The evidence in the record relevant to the cause of the December 2008 loss consists solely of the statements of Robert Hamilton and plaintiff.  In sum, the statements indicate that on a rainy day, (1) water pooled outside the basement door due to a clogged outside drain and ran into the basement from underneath the door; (2) the drain inside the basement also emitted water; and (3) the infiltration occurred due to the incomplete repair of the January 2007 loss.  As set forth below, the court concludes that the policy does not cover the causes unequivocally evidenced by the record.

Defendant argues that the flood exclusion bars recovery assuming that water pooled outside the basement door due to a clogged outside drain and ran into the basement from underneath the door.  Plaintiff argues that rainwater rather than floodwater caused the damage and that rainwater running down the side of the house cannot reasonably be considered floodwater.  The court need not interpret the flood exclusion as the fourth provision excludes the loss.  The parties do not dispute that the water was on the ground.  Because the provision states, "regardless of its source," the fact that the source of the water was rain does not remove the loss from the scope of the exclusion.  Moreover, the provision expressly contemplates water that flows through any part of the residence.

At her deposition, plaintiff testified that water also entered the basement through an inside drain.  (Doc. 52-6 at 4-6.)  However, the second provision excludes losses caused in this manner.

Plaintiff also argues that the same waterline break from the January 2007 loss caused the December 2008 loss.  Plaintiff also stated that the failure to install a backsplash during the repairs to the January 2007 loss caused the December 2008 loss.  "In an action to recover on an insurance policy, an insured must prove either that he complied with the policy provisions that require performance on his part or that he has an acceptable excuse for non-performance." Inman v. St. Paul Fire & Marine Ins. Co., 347 S.W.3d 569, 580 (Mo. Ct. App. 2011).  "[A]n insured, or one standing in the shoes of an insured, will not be barred from recovery based on the

breach of these conditions unless the insurer can show that it has been prejudiced by the insured's non-compliance with such policy provisions." Johnston v. Sweany, 68 S.W.3d 398, 402 (Mo. 2002).

Even assuming that the pipe collapse or failure to repair the January 2007 loss caused the December 2008 loss, the insurance policy provided that, following a loss, the insureds must protect their property from further damage. (Doc. 73-1 at 24.) Plaintiff has not indicated that the insureds protected the property from further loss from this source, nor any acceptable excuse for failing to do so. Moreover, the failure to protect the property prejudices defendant by increasing the amount of the loss. Plaintiff has not shown that the insureds satisfied the policy conditions, and defendant has shown prejudice.

The December 2008 loss is not covered by the policy. Accordingly, regarding the December 2008 loss, defendant is entitled to summary judgment.

**C. March 2009 Claim**

Regarding the March 9, 2009 loss, defendant argues that plaintiff failed to comply with certain policy provisions by failing to provide a detailed list of the stolen items and failing to file a police report. Defendant argues that plaintiff is thereby barred from recovering under the insurance policy. Plaintiff responds that she complied with the policy provisions and that defendant shows no prejudice caused by any failure to comply. Defendant argues that it notified plaintiff of her duty to file a police report and that the failures to fulfill the policy conditions prejudiced its ability to investigate or evaluate the claim.

The insurance policy required the insured to file a police report in the event of a theft. (Doc. 73-1 at 24.) The record does not indicate any filing of a police report related to the March 2009 claim. Plaintiff argues that defendant did not request a police report, which constitutes an acceptable excuse for failure to fulfill this condition. Although whether defendant requested the police report is disputed (Doc. 52-15; Doc. 68-1 at 2), the contractual requirement that the insureds report thefts to the police does not turn on whether defendant specifically requests a police report. Moreover, a party to a contract is generally presumed to know the terms of the contract. Grossman v. Thoroughbred Ford, Inc., 297 S.W.3d 918, 922 (Mo. Ct. App. 2009); Cohen v. Metro. Life Ins. Co., 444 S.W.2d 498, 503 (Mo. Ct. App. 1969); Gooch v. Motors Ins. Co., 312 S.W.2d 605, 609 (Mo. Ct. App. 1958).

The insurance policy also required the insureds to provide "a detailed list of the damaged, destroyed, or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed." (Doc. 73-1 at 24.) On March 26, 2009, plaintiff emailed defendant a list of ten items that contained none of the additional information required by the policy. (Doc. 52-16.) Although plaintiff's affidavit states that on March 16, 2009, she faxed defendant a list of information within her possession regarding the stolen items, this fact is disputed. (Docs. 52-16, 68-1 at 2.)

Defendant argues that the lack of information caused by the failure to comply with the policy conditions prejudiced its evaluation and investigation of the March 2009 claim. Defendant cites Inman v. St. Paul Fire & Marine Ins. Co., 347 S.W.3d 569, 580 (Mo. App. Ct. 2011), arguing that the court should presume that an unexcused failure to notify results in prejudice to the insured. However, Inman refers specifically to the failure to forward litigation pleadings to the insurer. Inman, 347 S.W.3d at 580 (quoting Rocha v. Metro. Prop. & Cas. Ins. Co., 14 S.W.3d 242, 248 (Mo. Ct. App. 2000)). The conditions at issue more closely resemble the requirement in automobile insurance policies that the insured must timely report hit-and-run accidents to the police for which Missouri law recognizes no presumption of prejudice. See Tresner v. State Farm Ins. Co., 913 S.W.2d 7, 16 (Mo. 1995). Considering that whether plaintiff provided defendant with a detailed property list remains disputed, the court concludes that the prejudice resulting of any unfulfilled conditions also remains disputed.

Accordingly, with respect to the March 2009 claim, defendant's motion for summary judgment is denied.

## IX.  CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the motion of defendant Allstate Indemnity Company for summary judgment against plaintiff Juanita Tansil (Doc. 53.) is sustained in part and denied in part.  Specifically, the court grants partial summary judgment in favor of defendant Allstate Indemnity Company on the dwelling loss portion of the January 2007 insurance claim.  The court also grants summary judgment in full on the December 2008 insurance claim.  The motion is denied in all other respects.

**IT IS FURTHER ORDERED** that the motion of defendant Allstate Indemnity Company to strike (Doc. 56) is denied.

**IT IS FURTHER ORDERED** that the motion of defendant Allstate Indemnity Company to deem material acts admitted (Doc. 65) is denied.

**IT IS FURTHER ORDERED** that the motion of plaintiff Juanita Tansil to strike defendant's summary judgment reply and response to plaintiff's statement of material facts (Doc. 75) is denied.

**IT IS FURTHER ORDERED** that the case proceed to trial on (1) defendant's counterclaim regarding the cost of the living expenses and personal property loss portions of the January 2007 insurance claim and (2) plaintiff's claim and defendant's counterclaim regarding the March 2009 insurance claim.

　　　　　　　　　　　　　　　　　　　　　/S/   David D. Noce　　　　
　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

Signed on January 3, 2014.